We'll hear the next case on the calendar, DeFilippo. Good morning, Your Honors. Anthony O'Rourke for the Federal Defenders of New York on behalf of Rocky DeFilippo. May it please the Court. Judge Pauley described this case as being about a personnel matter within Amtrak and echoed the jury foreperson's puzzlement as to why the full weight and force of the U.S. government came down on Mr. DeFilippo for it. This personnel matter involved neither wire fraud nor the conspiracy to commit wire fraud because the misstatements at issue were incapable of influencing the outcome of the objective decision-making process Amtrak used to evaluate Mr. DeFilippo's request for a pay raise. Why wasn't that a jury question? I'm sorry, Your Honor? Why wasn't that a jury question? It was not a jury question, Your Honor, because materiality is an objective legal standard. And so if a statement cannot affect the outcome rather of a decision and merely can serve to prolong the decision-making process— Wasn't there testimony that it was material, that the misrepresentations were material? Wasn't there testimony from various Amtrak people that, yeah, that was something that drove the decision here? Your Honor, the worst testimony for the appellant, I would suggest, is that of Ms. Leck of Labor Relations who testified specifically that the term, that being a reserve officer would or could, would matter— I'm sorry, would, could matter. And this view was predicated on Ms. Leck's mistaken belief that a reserve officer was necessarily a sworn law enforcement officer. But Ms. Leck, consistent with the other decision-making witnesses— in fact, all of the witnesses— testified that the criteria for whether or not an Amtrak police officer was eligible for a pay raise was whether someone was a sworn law enforcement officer with full arrest powers. Can I back up a little bit here? Because it seems like, apart from the testimony, there's actually a written standard here, right? From the collective bargaining agreement? And I'm referring to it, I think it's in the party's briefs, it's Appendix 830. It's a standard that states as follows, employees transferring to Amtrak from another police agency while in active status at agency will receive credit and goes on. Isn't that the standard here that we should be looking at? Judge Meyer, the collective bargaining agreement does control, as it was interpreted by the Amtrak decision-makers. And on that point, the— Okay, so, all right, so we agree on that. Then it seems to me your argument ultimately turns on, and your reliance on Regas and other cases, is that there was an, quote, objective determination standard here. And I'm having a hard time understanding how it was objective if you are relying essentially on contrasting testimony of people about what their, I think, subjective interpretation of the written standard is. Because it strikes me that if you just looked at the written standard here, Amtrak's job is to try to figure out, is the person in, what's active status mean? And active status could turn on whether you're an auxiliary or reserve or whether you said in the very letter that you've submitted for purposes of the pay raise that you are an active member. So I'm having a hard time with that issue. Two interrelated points in response to Judge Meyer. First, the collective bargaining agreement was interpreted by Amtrak decision-makers through the Q&A document developed with Labor Relations Office in connection with the union. And that document provided that non-sworn police officer service is inapplicable for prior service credit. So if you were in active status as a non-sworn police officer or as a secretary in a police department, you were ineligible under Amtrak's policies for prior service credit. And for that reason, it was an objective decision-making process, and there was no dispute among the witnesses, among the decision-making witnesses, or for that matter, even Ms. Leck, as to that criteria. Ms. Leck, consistent with the decision-making witnesses, testified that only sworn law enforcement officers are eligible for prior service credit. And her belief that a reserve officer would or could, if even read in the light most favorable to the government, suggests that she believes that it mattered, was predicated on a belief that a reserve officer was necessarily a sworn law enforcement officer with arrest powers. In fact, it was ambiguous to the decision-making witnesses as to whether a reserve officer fit that category, and that required them to look at the employee's background file and the policies of the police department that the person claimed to be associated with. We're focused on the relevant standard, of course, which isn't whether it actually affected the decision, but whether it was capable of affecting the decision. Can't we say that at least a reasonable jury could have concluded, on the basis of these representations in the letter about being an active member, about being a reserve member, that that was capable of ultimately leading Amtrak to award the pay, higher pay? Your Honor, the respectfully no, and that's because the word active has to be read in connection with whether or not somebody had sworn law enforcement powers. So if you were an active member of the police department without sworn law enforcement powers, then you were simply ineligible for prior service credit, and there's no testimony in the record that permits an alternative inference. And as to that point, the only way that a jury might believe otherwise is on the government's theory, which is that a misstatement may be material merely if it serves to prolong an employer's objective decision-making process, even if it is incapable of influencing the outcome of that process. Now, this novel theory is unsupported by precedent, and it would expand the scope of the wire fraud statute well beyond schemes to defraud a victim of money or property, as required by the text of Section 1341. Can I ask you to address your argument with respect to the statements that were made in the recordings? And specifically, could you help me understand what exactly is the confusion or the misimpression that the jury was left with because of that the excluded statements would have cleared up? Yes, Your Honor, happily. I see that my time is almost up, but if I may. So the jury found DeFilippo guilty of the charged offenses, including false statements, after it played the recording to establish consciousness of guilt. That was the purpose for which it was admitted. And the excluded portion provided vital exculpatory context with respect to that point because it showed that Amtrak believed himself to be contractually entitled to prior service credit based on his status as an auxiliary officer. Now, if he in fact believed that he was entitled to prior service credit based on his status as an auxiliary officer, that undermines the inference that he acted with fraudulent intent when he made the misstatements or participated in a scheme to defraud, rather than saying this for perhaps administrative experience. And it also undermines the willfulness element of the false statements. I can understand why it might be helpful to you to have that come in, but the judge here I think was looking at Rule 106, the rule of completeness. Correct. So how is it that these additional statements were necessary to avoid making the statements that did come in not misleading? Your Honor, you're correct that the rule of completeness does not allow statements that are simply relevant. It has to provide exculpatory context for those parts that were admitted. And here the admitted portions were offered to show consciousness of guilt, and with respect to that point, consciousness of guilt, there were two competing interpretations that were forcefully advanced at trial. One of those interpretations, the government, was what the jury convicted on, that he willfully lied and that he altered with fraudulent intent. The other, advanced by the defense in summation, was that he did not act with fraudulent intent when he submitted the false statements and that he did not act willfully when he told the agents that he did not do it because it didn't matter to the prior service credit application and because it lent support to that alternative. I'm sorry, Your Honor. In terms of the admitted statements, he says that, I quote, there was no benefit to being reserve or auxiliary because the contract, and I quote, did not state anything. So as to what was admitted, although you could say that the excise portions might have made it more clear, it's very hard to say based on what was admitted, isn't it, that he didn't get the fundamental point across that you are now saying had to be completed by the additional language that was excluded? With respect, Chief Judge Katzmann, and of course the panel will make the determination for itself, but the portions that were admitted where he said no benefit seem to be a panicked and incoherent statement when you listen to it in context. The fact that the statements immediately following the portion that the jury heard, then in lucid terms explained why Mr. DeFilippo actually believed there was no benefit because the contract entitled him, in his view, to prior service credit as an auxiliary officer, lends a very different context and supports far more robustly the interpretation the defense offered than the panicked and incoherent statements. Now, did you seek below admission of the entire statement, or did you actually focus on specific portions that you're now focusing on now as being important? In other words, when the district judge was making the decision about how to apply the rule of completeness, were you essentially saying the whole thing should come in, or were you saying, well, just these specific lines? Your Honor, we sought admission of basically a substantial portion in entirety, but we didn't seek for admission of the entire recording. Much of the recording had the special agents explaining what could happen to him, making accusations, things that would be simply inappropriate and prejudicial for the jury to hear. If there are no further questions, I reserve the remainder of my time. Thank you. May it please the Court, my name is Alex Ross-Miller, and I represent the government. The evidence in this case proved that the defendant lied to his employer to get additional compensation he knew he was not qualified for. In doing so, he intended to make material false statements, he conspired to make material false statements, and he did, in fact, make material false statements. The defendant principally asserts that the defendant's lies were not material, which is wrong.  That the defendant employed false statements and misrepresentations that were capable of influencing relevant decision-makers. Is that the inquiry here? Is it whether it's capable of simply influencing what relevant decision-makers do, in other words, prolonging the process? Or is the relevant concern whether it was capable of affecting the ultimate decision that was made as to the pay award? The latter, Your Honor. A false statement is material if it has a natural tendency to influence or is capable of influencing the decision of the decision-making body to which it was addressed. But your argument here is not that materiality could have been premised on essentially sub-decisions along the way to making the ultimate pay decision. I'm not sure I fully understand the question, Your Honor, but I think the answer is that the government is not trying to conflate relevance with materiality. No, the question is this, is there's many decisions that can occur along the way, right, to deciding whether there's a pay increase awarded here, right? And one of the decisions can be to look into things further, right, to prolong the process. So my question is, are you saying that we should look at materiality in light of that, in light of affecting the decisional process along the way to making the ultimate decision about the award of pay, or are we looking solely and was the jury's focus solely on the ultimate decision made? So I think, Your Honor, that the answer is a combination of both. Certainly if there are stages of a decision-making process and during any stage of those processes a determination could have been made, then at any stage the misrepresentation could be material. In other words, if additional investigation is required and sort of along the way a decision could be made, it's not simply the prolonging of the investigation that the government is arguing. To give perhaps an extreme example, if information was required and it was submitted in Spanish rather than English and a translation was required, that would prolong the decision-making process, but the end result would be the same. Here at any point along the way, either right at the beginning when the information was submitted or as the investigation went along, a decision could have been made and the material— So was the jury told that? Because I'm looking at the jury instructions, 772. It strikes me that the jury was not really—that wasn't really explained to the jury in terms of what decision could be affected. Your Honor, I don't think that there's any challenge to the jury instructions, but I don't think there's an issue of there being confusion about the decision-making process being what the government is arguing. The government argued repeatedly that this had the ability to affect the decision of the decision-makers and not that it simply extended the process of the determination. And in fact, at any stage, any of these decision-makers could have and in fact did at times believe that the misrepresentation indicated that the defendant had what Amtrak was looking for. And that's an important point. What Amtrak was looking for here was officers with experience as a full law enforcement officer. And that's not just a matter of whether they were sworn. It's clearly a sort of larger and more involved process to determine— And what are the factors to the Q&A, which Mr. O'Rourke points out to? The Q&A, which does seem to say—make essentially a make or break on sworn status. I think what the Q&A is is a sort of guide to the process. And in fact, Appellant's counsel described the contract as controlling this determination as interpreted by decision-makers. The standard in the contract gets interpreted through the Q&A, which gets interpreted. That's not an objective sort of binary mechanical decision. The idea that all of this was interpreted is itself the ballgame, Your Honor. And so with respect to the decision—with respect to whether this could have affected the decision, there was significant testimony not just from Ms. Leck but from other witnesses as well. Maureen Powers of Amtrak believed that in some jurisdictions reserve officers may be sworn, for example. That's in the government's brief at 9. Sergeant Kalin from the Suffolk County Police Department testified that he understood reserve officers had police powers under some circumstances. So this isn't just a binary mechanical objective decision. And certainly even if the court were persuaded that it was, the defendant's challenge to the conspiracy conviction also fails. The conspiracy here was to lie to Amtrak to get money by falsifying the nature of the defendant's prior experience in a way that would be material. That is, the jury was entitled to infer that the defendant and his union boss co-conspirator knew that the defendant would not qualify for prior service credit based on the defendant's actual prior experience and agreed to mislead Amtrak into believing that the defendant did qualify based on his prior history in a way that would be material to Amtrak in order to obtain the money. The fact that Mr. DiFilippo concealed and actively concealed a disqualifying material fact and that there might be sufficient evidence to find liability for wire fraud is a different question, isn't it, than whether the affirmative statements themselves are material? I'm sorry, I'm not sure I understand the court's question. It is certainly a different question with respect to the substantive charge versus the conspiracy charge. Yes, that's absolutely true. And that is what I was trying to describe, that the conspiracy need not be to do the precise thing that ultimately was done. For example, if someone agrees to sell a kilogram of cocaine and then accidentally sells a kilogram of flour, that individual is still guilty of conspiracy to distribute narcotics. With respect to the rule of completeness issue, the defendant argues that the entirety of an interview of the defendant by law enforcement officers was required to be admitted at trial and that Judge Pauly abused his discretion by denying this very broad and nonspecific defense request. Judge Pauly considered this issue thoughtfully and carefully and ruled that the portions the defendant sought to admit were not necessary to explain the admitted portions, which were fully contextualized and were not misleading or unfair. Judge Myers, you noted, even were the general content of those portions particularly important or necessary, they were in fact already included in much of what was submitted to the jury. On the conspiracy issue, is there any mental state that a conspirator has to have as to materiality? In other words, in your flour drugs example, the person thinks it's drugs, turns out to be flour, but thinks it's drugs. The facts that they know or that they believe in would rise to the level. And so the question here is, if the facts that were believed by Mr. DiFilippo here would not rise to the level of being material, does that put in jeopardy the conspiracy? The conviction solely because he's essentially agreed, for instance, what if he agreed, I'm going to submit a request for a pay raise that's misdated by one day. And he thinks for some reason that that's going to somehow lead to the pay raise. But it wouldn't. Would that be? I'm sorry. Okay. Would that be sufficient? I think the question is, what is the defendant agreeing to? What does the jury find that the defendant is agreeing to? So if the defendant agrees to, in other words, conspires with another person to defraud Amtrak, certainly the intent was to have a misrepresentation that would be material to Amtrak. So they provided the money. I suppose it is conceivably possible that someone could agree to do something that they knew would not be material, that they specifically knew would not be material. In other words, if Mr. DiFilippo had written a letter saying, I have prior experience as an ice cream truck driver, and therefore you should give me money, I think that might raise the question that the court is presenting. But here there's no question of that. And the jury certainly had ample evidence to conclude that he was guilty of conspiracy, given the facts here. May I ask you, what are we to make of the four-persons letter? We don't know why the full weight and force of the U.S. government had to come down on you before it appeared to be kind of a petty crime. And then the district court says that he believes the government has lost perspective. What do we make of those kinds of comments in the sentencing transcript? Well, certainly what I would make of the letter that was received is that the jury took this case very seriously and considered the evidence with great sensitivity and consideration. I don't know that I have the quote precisely correct in my head, but I think that the four-person said something like we couldn't ignore the facts or couldn't ignore the evidence in this case. We took no pleasure in the verdict, but we couldn't unsee and unhear what was presented to us. That's right, exactly, Your Honor. So I think the jury carefully considered the evidence and rendered an appropriate verdict. That doesn't get to Judge Joni's question, though, and Judge Pauly's concern that should this be the kind of activity that the government, given scarce resources, should be concerned about? Your Honor, I don't have a view on the metaphysical question, but certainly I think there's not a preeminent issue before the court to determine on that issue. A lot of cases have a lot of different facts behind them, but certainly in this case, the evidence was carefully considered by the jury. They came to the conclusion that the defendant was guilty on the counts, and we don't think there's any reason to distort those convictions. Do you know if this is a widespread practice and that this was an effort to signal that this kind of activity would not be tolerated? In other words, is there some sort of policy behind this, strategic policy? Your Honor, I'm not prepared to comment on the policy with respect to any particular prosecution. I think that's beyond my particularized knowledge and ability to comment on, but I can say that the case was obviously charged as a conspiracy. There was at least one co-conspirator involved. There was a conviction that resulted from that charge, and there was no question that the defendant here had lied to his employer to obtain money and did so as an officer of the law. Thank you. I'd like to briefly address my friend from the government's point on materiality and then turn to the conspiracy issue. On materiality, I'm pleased that there seems to be a concession that a misstatement is not material, simply if it serves to prolong a decision-making process. I read this argument, the argument being offered here as being that these misstatements are material because there was discretion at some point. At some point, somebody could have made the decision to grant Mr. DeFilippo prior service credit on the basis of his status as a prior law enforcement, as a reserve officer. The record permits no such inference for reasons that we articulate in the opening brief and the reply brief. Second, on the conspiracy point, simply put, where the substantive object of a conspiracy is lawful, no criminal conspiracy exists. And here the object that Mr. DeFilippo agreed with his union representative to pursue was to obtain a pay raise by way of misstatements concerning his volunteer job title. Because these misstatements are immaterial as a matter of law, the underlying object of their agreement was not wire fraud, and hence there cannot be a conspiracy to commit wire fraud. On your point, Judge Meyer, as to whether intent as to materiality for a fact that is not objectively legally material would suffice to pursue to prove conspiracy, it would not. As the Fifth Circuit held in United States v. Campbell, and similarly to what this court held in United States v. Nevode. Was the Q&A binding? The Q&A was the structured policy according to the decision makers. Perhaps there could have been policy. I mean it was referred to, but was it binding in the way that the objective guidelines in Regas were? So, two points. As a matter of legal contract, it was not binding until the time of the settlement in September of 2013. As a matter of bureaucratic decision making policy, every witness consistently testified that it guided their policy and that only sworn law enforcement officers were eligible for prior service credit. Thank you. Thank you both for your arguments. The court will reserve decision. As I said, the final two cases, Jones v. Cohen and Acosta v. Marchiulli are on submission. Judge Droney and I thank Judge Meyer of the District of Connecticut for serving with us today. The clerk will adjourn court.